UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDWEST TRADING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBALTRANZ ENTERPRISES, INC., AMERICAN FREIGHT NETWORK, INC., AKOP KARAPETAN d/b/a V& R TRUCKING, AND EVERTEK, INC., <br><br> Defendants. | No. 12 C 9313 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant GlobalTranz Enterprises, Inc.'s ("GlobalTranz") motion for reconsideration. On July 23, 2014, the Court entered a Memorandum Opinion and Order granting in part, and denying in part, GlobalTranz's motion for summary judgment. GlobalTranz has asked the Court to reconsider two portions of its ruling. First, GlobalTranz argues that the Court incorrectly held that the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 14501(c)(1), does not preempt plaintiff Midwest Trading Group, Inc.'s ("Midwest") fraud claim. Second, GlobalTranz argues that the Court incorrectly held that material factual disputes precluded summary judgment on Midwest's claim for damages in excess of the "limitation of liability" provision of GlobalTranz's "Freight Broker Agreement Terms and Conditions" ("Terms and Conditions"). For the

following reasons, the Court grants GlobalTranz's motion to reconsider in part, and denies it in part.

## Background

The Court will assume that the reader is familiar with its prior Memorandum Opinion and Order in this case. *See Midwest Trading Grp., Inc. v. GlobalTranz Enter., Inc.*, No. 12 C 9313, 2014 WL 3672932 (N.D. Ill. July 23, 2014). Nevertheless, an overview of the facts and the relevant portions of the Court's opinion will be helpful.

In January 2012, West Coast Imports, Inc. ("West Coast"), acting as Midwest's agent, contacted GlobalTranz — a transportation broker — to arrange for the shipment of Android tablet computers. *Id.* at *1. The shipment was divided into two loads, one destined for Texas (zip code 78218) and the other for North Carolina (zip code 27536). *Id.* at *2. Midwest had used GlobalTranz as a broker on one prior occasion. *Id.* at *1. West Coast had previously booked over 100 shipments with GlobalTranz on various occasions for other customers. *Id.* Nuria Coronado, a West Coast employee, contends that it was her "standard practice to book all load shipments via email directly with" Shawn Gengler, a GlobalTranz employee. R. 44-1 at 1 ¶ 3. Coronado attaches to her declaration an email that she sent to Gengler with respect to the Texas shipment:

> [Coronado:]
> 
> Hi Shawn Please quote[:] 6 Pallets[,] 3,710 Lbs[,] Dest. zip 78218[,] Android Tablet[,] $250,000.00[.]
> 
> Best Regards,

>Nuria Coronado.
>
>[Gengler:]
>
>$950 is my rate for this[.]

*Id.* at 8 (reformatted for clarity). It was Coronado's "understanding based on [her] experience with GlobalTranz that the quote included the cost of insurance." *Id.* at 1-2 ¶ 4. Vinay Saboo, West Coast's President, states that Gengler "confirmed" that the quoted price "included insurance against the loss or theft of the tablets during shipment." R. 29-2 ¶ 6. Gengler states that he "did not offer and West Coast did not request" such insurance. R. 20 at ¶ 7. GlobalTranz brokered the shipment to American Freight, which in turn brokered the shipment to V & R Trucking. *Midwest*, 2014 WL 3672932, at *2. While V & R's driver was out of the truck eating lunch, the tractor and trailer containing the tablets were stolen. *Id*. After the theft, Saboo emailed Gengler to confirm that tablets were insured. R. 44-3 at 2-3. Gengler confirmed that West Coast had purchased insurance in amounts sufficient to cover Midwest's losses from the theft. *Id*. at 2. In fact, GlobalTranz had not purchased third-party insurance and has refused to pay Midwest for the stolen shipments, prompting this lawsuit. Midwest alleges that GlobalTranz: (1) fraudulently induced Midwest to enter into a contract with GlobalTranz by misrepresenting that it would provide insurance for the shipments (Count I); (2) negligently "fail[ed] to take steps necessary to assure" that the Android tablets were not stolen (Count II); and (3) breached its contract by failing to obtain the insurance that it had agreed to procure (Count III). R. 1-1 ¶¶ 20-40.

In its summary-judgment motion, GlobalTranz argued that the ICCTA preempts Midwest's tort claims:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). The Court reviewed the relevant controlling authority construing § 14501(c)(1) and the comparable provision of the Airline Deregulatory Act ("ADA"). *See Midwest*, 2014 WL 3972932, *4-7.[1] Applying those authorities, the Court held that the ICCTA preempted Midwest's negligence claim, *id.* at *7, but not its fraud claim. *Id.* at *7-8. Although it was a close question, *see id.* at *7, the Court concluded that Midwest's fraud claim did not "relate to" GlobalTranz's services as broker:

> Midwest's claims do not relate to GlobalTranz's conduct in brokering the cargo. Rather, Midwest is claiming it was fraudulently induced into entering into a contract with GlobalTranz—i.e., it would not have paid GlobalTranz and allowed GlobalTranz to transport its shipments of Android tablets if it knew GlobalTranz would not procure insurance. That claim relates to pre-transportation conduct, as opposed to how any contracted-for services of GlobalTranz were carried out.

---

[1] *See Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769 (2013); *Rowe v. N.H. Motor Transp. Ass'n*, 522 U.S. 364 (2008); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992); *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544 (7th Cir. 2012); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996). GlobalTranz did not cite any controlling authority applying the ICCTA in its opening brief. *See* R. 19 at 6-8. It cited one Seventh Circuit case in its reply brief — *Travel All Over the World* — and only in passing. *See* R. 37 at 12.

*Id*. The Court further concluded that "enforcing the common law prohibition on fraud in this case will simply hold the parties to their bargained-for expectation." *Id.* at *8. "[P]rohibiting parties from misrepresenting the terms of a contract provides a generally-applicable rule that affects a carrier's rates and service only in its capacity as a member of the general public." *Id.*

With respect to Midwest's breach-of-contract claim, GlobalTranz argued that the parties, through their course of dealing, had agreed to be bound by GlobalTranz's Terms and Conditions.[2] That document includes a provision limiting GlobalTranz's liability to an amount equal to the fees it earned in connection with the shipment. R. 20-3 at 20. The Court held that there was a genuine dispute of fact regarding whether the parties intended to be bound by the Terms and Conditions. *Midwest*, 2014 WL 3672932, at *10-11.

## Analysis

### I. Legal Standard

This Court has "inherent authority" under Rule 54(b) to reconsider its interlocutory orders. *Janusz v. City of Chi.*, No. 03 C 4402, 2015 WL 269934, at *4 (N.D. Ill. Jan. 20, 2015); Fed. R. Civ. P. 54(b) (Non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *see also Gibbs v. Lomas*, 755 F.3d 529, 535 (7th Cir. 2014) (An order denying a summary-judgment motion is interlocutory.). A motion

---

[2] GlobalTranz concedes that factual issues preclude summary judgment on its alternative argument that Midwest and West Coast expressly agreed to be bound by the Terms and Conditions. R. 51 at 13; *see also Midwest*, 2014 WL 3972932, at *10-11.

to reconsider is not, however, a proper vehicle for rehashing arguments that the Court previously rejected. *See Janusz*, 2015 WL 269934, at *4. "Rather, a motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it." *Id.*

## II. Preemption

GlobalTranz argues that the Court misapplied the Supreme Court's decision in *Dan's City*. R. 51 at 5-6. The defendant towing company in *Dan's City* towed the plaintiff's car from his apartment complex's parking lot at his landlord's request. *Dan's City*, 133 S.Ct. at 1776-77. The defendant did not know the plaintiff and was unaware that he was hospitalized when it towed his car. *Id.* at 1777. The plaintiff remained in the hospital for approximately two months, during which time the defendant stored his car. *Id.* It later put the car up for auction and traded it to a third party when the auction did not attract any bidders. *Id.* The plaintiff sued the defendant for violating the New Hampshire Consumer Protection Act and breaching its "statutory and common-law duties as a bailee to use reasonable care in disposing of the car." *Id.* The Supreme Court rejected the defendant's argument that § 14501(c)(1) preempted these claims on essentially two grounds. First, the Court held that the plaintiff's claims did not relate to the "transportation of property." Title 49 defines "transportation" as follows:

> **Transportation.** -- The term "transportation" includes —

> **(A)** a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> **(B)** services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102(23). The Supreme Court concluded that "storage" and "handling" fit within this definition "only when those services 'relat[e] to th[e] movement' of property." *Dan's City*, 133 S.Ct. at 1779. It observed that "[t]emporary storage of an item in transit en route to its final destination relates to the movement of property and therefore fits within § 13102(23)(B)'s definition." *Id*. Storage and handling *after* transportation—the focal points of the plaintiff's statutory and common-law claims—do not. *Id*. Second, the Court held that the plaintiff's claims were "unrelated to a 'service' a motor carrier renders its customers." *Id*. The defendant's transportation service—towing the plaintiff's vehicle from his landlord's parking lot—"ended months before the conduct on which [the plaintiff's] claims are based." *Id*.

The Court reasoned from *Dan's City* that *pre*-transportation conduct, like post-transportation conduct, "does not concern the transportation of property (or relate to contracted-for services)." *Midwest*, 2014 WL 3672932, *7. The Court now concludes that the rule it inferred from *Dan's City* sweeps too broadly. In this case, the relevant term in § 13102(23) is "arranging for . . . the movement of" property. A broker arranges for the movement of property *before* it is moved, but that service is

nevertheless within the scope of "transportation." *See, e.g., Prof'l Towing & Recovery Operators of Ill. v. Box*, 965 F. Supp. 2d 981, 999 (N.D. Ill. 2013) (holding that § 14501(c)(1) preempted state laws requiring the owner's "specific authorization" before a towing company may "commence the towing of a damaged or disabled vehicle"). Midwest's claim in this case predates GlobalTranz's *performance* of the services it agreed to provide. But § 14501(c)(1) does not preempt only those claims that arise from a broker's performance of its services. The state law merely has to "relate to"—i.e., have "a connection with or reference to"—the service. *Morales*, 504 U.S. at 384.[3] The term "services" is also broad, encompassing "all elements of the [motor] carrier service bargain." *Travel All*, 73 F.3d at 1434. In this case, insurance is an "element of the service bargain," even if it is "not the main event." *Prof'l Towing*, 965 F.Supp.2d at 999; *see also Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 387 (7th Cir. 2007) (applying the federal-common law analog to the ADA, the court rejected the plaintiff's attempt to distinguish between the "shipping" elements of the bargain and shipment insurance for purposes of preemption). Midwest's claim that GlobalTranz misrepresented what services it would provide "relates to" services "with respect to" "arranging for . . . the movement of" property.

---

[3] "[C]ourts describe the phrase 'with respect to' as synonymous with the phrases 'with reference to,' 'relating to,' 'in connection with,' and 'associated with,' and they have held such phrases to be broader in scope than the term 'arising out of,' to be broader than the concept of a causal connection, and to mean simply 'connected by reason of an established or discoverable relation.'" *Huffington v. T.C. Grp. LLC*, 637 F.3d 18, 22 (1st Cir. 2011) (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.) (collecting authorities))*.*

As further support for its holding, the Court stated that Midwest's fraud claim: (1) only seeks to "hold the parties to their bargained-for expectation"; and (2) invokes a default rule—parties must "be honest and forthright about their services"—that applies to the general public and is too remote from the transaction at issue. *Midwest*, 2014 WL 3672932, *8 (citing *S.C. Johnson*, 697 F.3d at 558). GlobalTranz argues that the Court's reasoning is inconsistent with *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000). Mesa, a regional airline, had a "code-share" agreement with United Airlines. *Id.* at 606. In exchange for the right to use United's service marks and logos, Mesa agreed to tailor its business to further United's interests. *See id.* (The regional airline in a code-share arrangement must "tailor[] its schedules so that they mesh with the major carrier's arrivals and departures at the hub, provide[] planes appropriate to the traffic generated by the major carrier, and agree[] to accept revenue that the major carrier controls."). United and Mesa later agreed to extend the term of their code-share agreement and to expand its scope. *Id.* At the same time, Mesa purchased several planes from United. *Id.* During the extended term, Mesa accused United of taking more than its share of revenues and of squeezing Mesa for excessive fees. *Id.* United ultimately terminated the parties' agreement after Mesa cut services to certain regional markets. *Id.* at 607. Mesa sued United for, among other things, fraudulently inducing it to: (1) purchase the airplanes; and (2) extend the term and scope of the parties' code-share agreement. *Id.* On appeal of the district court's

ruling that the ADA preempted this claim, Mesa argued that it simply sought to enforce the parties' bargain:

> [Mesa argues that its claim is not preempted] for the same reason the Supreme Court held in *Wolens* that contract claims are not preempted: § 105(a)(1) is designed to replace regulation with voluntary agreements, and the fact that states sometimes apply the label "tort" to common-law doctrines that implement private agreements cannot doom their claims . . . .

*Id.* at 609. The Seventh Circuit concluded, on the contrary, that Mesa's claim was "not by any stretch of the imagination a request to enforce the parties' bargains; it is a plea for the court to replace those bargains with something else." *Id.* The Court acknowledged that "the institution of contract depends on truthfulness," and that the states have an interest in enforcing prohibitions against fraud. *Id.* The ADA, however, preempts state laws insofar they apply these norms to "enlarge" or "enhance" the parties' bargain:

> When all a state does is use these rules to determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule. But when the state begins to change the parties' financial arrangements, as Mesa demands, it is supplying external norms, a process that the national government has reserved to itself in the air transportation business. Mesa does not want to cancel the agreement and restore the status quo as of 1994. It wants damages.

*Id.* at 609-10. The Seventh Circuit affirmed the district court's order dismissing Mesa's fraudulent inducement claim. *Id.* at 611.

Although neither party has raised this issue, the Court notes that it is unclear whether Midwest's claim is based upon a misrepresentation of fact, (GlobalTranz told Midwest that the quote included insurance when in fact it did

not), or so-called "promissory fraud" (GlobalTranz promised to provide insurance but never intended to honor its promise). *See JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.*, 707 F.3d 853, 865 (7th Cir. 2013) (A party commits promissory fraud when it makes a promise "with no present intention of fulfilling it."); *see also* R. 1-1 at 3 ¶ 25 ("At all times when dealing with Midwest, GlobalTranz feigned that it would actually provide insurance on the Loads when it in fact knew that it would not."). Insofar as Midwest is proceeding under the first theory, its fraud claim squarely conflicts with *Mesa Airlines*. Midwest cannot rely on state tort law to "replace" the parties' bargain (an agreement that does not require GlobalTranz to procure insurance) "with something else" (damages stemming from Midwest's reliance on GlobalTranz's false statement that the agreement does include insurance). *Mesa Airlines*, 219 F.3d at 609. *Mesa Airlines* also undermines the Court's reliance on *S.C. Johnson*. *See Midwest*, 2014 WL 3672932, *8. The plaintiff in *S.C. Johnson* alleged that one of its employees participated in a bribery and kickback scheme with several of the plaintiff's transportation vendors. *See S.C. Johnson*, 697 F.3d at 545. The Seventh Circuit held that § 14501(c)(1) preempted the plaintiff's claims for fraudulent misrepresentation by omission and conspiracy to commit fraud, but did not preempt its state-law bribery and racketeering claims. *See id.* at 557-61. The Seventh Circuit described the non-preempted claims as "state laws of general application that provide the backdrop for private ordering." *Id.* at 558. In doing so, it distinguished the preempted claims in *Mesa Airlines*:

> Neither the bribery statute underlying the conspiracy theory nor the racketeering statute provides non-bargained alternatives to the

> contractual terms that the parties selected. These theories are thus not like the ones we rejected in *Mesa Airlines*, where we recognized that the plaintiffs' theories of tortious interference with contract, breach of fiduciary duty, and fraudulent inducement to enter a contract were, in the final analysis, simply efforts to change the bargain that the parties had reached.

*Id.* Reading *Mesa Airlines* and *S.C. Johnson* together, it is apparent that fraudulent inducement does not belong in the category of laws that simply "provide the backdrop of private ordering." *Id.*; *cf. Midwest*, 2014 WL 3672932, *8.

If, instead, Midwest is alleging promissory fraud, it faces two hurdles. First, Illinois generally does not recognize promissory fraud as a valid tort claim. *See JPMorgan Chase*, 707 F.3d at 865. It makes an exception when the fraud "is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broad. Co., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995); *see also JPMorgan Chase*, 707 F.3d at 865. There do not appear to be any facts in the record that would support the existence of such a scheme. *See JPMorgan Chase*, 707 F.3d at 865 (rejecting a party's "garden-variety promissory fraud" claim premised on the opposite party's promise to secure permanent financing); *see also Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) ("By requiring that the plaintiff show a pattern, by thus not letting him rest on proving a single promise, the law reduces the likelihood of a spurious suit; for a series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise."). Second, even if Midwest had alleged and supported such a scheme, *Mesa Airlines* and *S.C. Johnson*

indicate that § 14501(c)(1) preempts promissory-fraud claims. Promissory fraud is an extra-contractual theory based upon the perception that, in some cases, ordinary contract damages are insufficient to address the breaching party's egregious conduct:

> The distinction [between the rule and the exception] certainly is unsatisfactory, but it reflects an understandable ambivalence, albeit one shared by few other states, about allowing suits to be based on nothing more than an allegation of a fraudulent promise. There is a risk of turning every breach of contract suit into a fraud suit, of circumventing the limitation that the doctrine of consideration is supposed however ineptly to place on making all promises legally enforceable, and of thwarting the rule that denies the award of punitive damages for breach of contract.

*Desnick*, 44 F.3d at 1354. Viewed in this light, promissory fraud is a state law "supplying external norms, a process that the national government has reserved for itself in the air transportation"—and motor-carrier—"business." *Mesa Airlines*, 219 F.3d at 609-10; *see also S.C. Johnson*, 697 F.3d at 557 (holding that § 14501(c)(1) preempted the plaintiff's claims for fraudulent misrepresentation by omission and conspiracy to commit fraud).

In sum, the court concludes § 14501(c)(1) preempts Midwest's fraud claim.

## III. Limitation of Liability

The Court held that there was a genuine factual dispute regarding whether the parties intended to be bound by the Terms and Conditions, including the provision limiting GlobalTranz's maximum liability to an amount equal to its fees (in this case, $3,450). *See Midwest*, 2014 WL 3672932, *10. Its conclusion applied to GlobalTranz's express-contract theory *and* its course-of-dealing theory. *Id.* With

respect to this issue, GlobalTranz's motion to reconsider simply rehashes arguments that the Court considered and rejected in its prior opinion. *See* R. 51 at 13-15. The Court declines to revisit its ruling that factual disputes preclude summary judgment on the limitation of liability issue.

## Conclusion

For the foregoing reasons, the Court grants GlobalTranz's motion to reconsider (R. 51) in part, and denies it in part. The Court sets a status hearing for March 17, 2015 at 9:00 a.m.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 5, 2015